**In re Phyllis M. AIN, Debtor.**

**Phyllis M. AIN, Appellant,**

v.

**Clinton Charles MYERS, et al., Appellees.**

Civil Action No. 93–B–2539.
Bankruptcy No. 92 23304 DEC.

United States District Court, D. Colorado.

March 6, 1996.

James W. Lamberson, Law Offices of James W. Lamberson, Denver, CO, for Appellant.

Lee M. Kutner, Joan B. Burleson, Rubner & Kutner, P.C., Denver, CO, for Appellees.

## MEMORANDUM OPINION AND ORDER

BABCOCK, District Judge.

Debtor Phyllis M. Ain ("Ain") appeals from orders of the bankruptcy court which relate to Ain's creditors, Clinton Charles Myers, the Clinton Charles Myers Revocable Trust and Summit Ranch Joint Venture (the "Meyers Group"): 1) denying Ain's motion to allow a late proof of claim on behalf of the Myers Group; 2) granting the Myers group relief from the automatic stay provisions of 11 U.S.C. § 362; and 3) denying Ain's motion for stay of execution pending appeal. I have jurisdiction over this appeal pursuant to 28 U.S.C. § 158(a). I remand for further proceedings.

## I.

Ain acted as officer, director, shareholder, and corporate counsel for EuroAmerican Capital Group, Inc. (EuroAmerican). In December of 1991, EuroAmerican agreed to secure for the Myers group a $60 million development loan to construct a resort in Summit County, Utah. As part of this agreement, the Myers group placed approximately $375,000 in escrow. In reliance on EuroAmerican's assurances that the loan had been secured, the Myers group released all funds held in escrow to Ain. On February 3, 1992, the Myers group learned that EuroAmerican had not secured a loan for the resort development. The Myers group maintains that, beginning in June of 1992, they demanded Ain and EuroAmerican return the $375,000. Neither Ain nor EuroAmerican returned this money.

Ain filed a Chapter 7 bankruptcy petition on October 23, 1992. At Ain's request, the bankruptcy court converted from a Chapter 7 action to a Chapter 13 proceeding on November 18, 1992. Ain failed to list the Myers group as potential creditors.

The bankruptcy court scheduled the first meeting of creditors for January 12, 1993, pursuant to 11 U.S.C. § 341(a). Creditors, therefore, had to file proofs of claims on or before April 12, 1993, 90 days after the first date set for the meeting of creditors. Fed. R.Bankr.P. 3002(c).

On February 2, 1993, the Myers group filed a complaint in California state court against Ain and EuroAmerican seeking return of the $375,000. The Myers group served Ain with a copy of the complaint in April of 1993.

On June 24, 1993, Ain filed an amended Chapter 13 plan and a motion to allow her to file a late proof of claim for the Myers group. After receiving notice of Ain's motion to file a late proof of claim on their behalf, the Myers group entered an appearance and objected. The Trustee also objected. The Myers group subsequently filed a motion for relief from stay on October 12, 1993. After an evidentiary hearing on November 3, 1993, the bankruptcy court denied Ain's motion to file the late proof of claim for the Myers group. The bankruptcy court also granted the Myers group's motion for relief from the automatic stay provisions of 11 U.S.C. § 362. The bankruptcy court ultimately confirmed Ain's Chapter 13 plan on June 13, 1994.

## II.

### A. Standard of Review

In reviewing a bankruptcy court's decision, the district court functions as an appellate court. Bankruptcy Rule 8013 authorizes district courts to affirm, reverse, modify or remand the bankruptcy court's rulings. District courts review factual findings under the clearly erroneous standard while conclusions of law are reviewed *de novo.* *Bartmann v. Maverick Tube Corp.,* 853 F.2d 1540, 1543 (10th Cir.1988).

Ain's appeal from the bankruptcy court's order denying her motion to allow late filing of the proof of claim implicates the bankruptcy court's interpretation of the bankruptcy code and bankruptcy rules. Thus, review is *de novo. See First Bank of Colorado Springs v. Mullet,* 817 F.2d 677 (10th Cir.1987); *In re Blehm Land and Cattle Co.,* 71 B.R. 818, 822 (D.Colo.1987). Ain's appeal from bankruptcy court's order granting the Myers group relief from stay is reviewed for abuse of discretion. *Pursifull v. Eakin,* 814 F.2d 1501 (10th Cir.1987). For reasons stated below, I do not address the issue whether the bankruptcy court abused its discretion in denying her motion for stay of execution pending appeal.

### B. Issues on Appeal

#### 1. Proof of Claim

A proof of claim is a written statement setting forth a creditor's right to payment or a right to an equitable remedy for breach of performance. Fed.R.Bankr.P. 3001(a). Section 501(a) of the code permits, but does not require, creditors to file proofs of claims. If a creditor elects not to participate in the case, it need not file a proof of claim. Debtors, however, may find themselves saddled with liabilities after the closure of their estates if creditors fail to file proofs of claims. Section 501(c) of the code seeks to avoid this result by authorizing the debtor to file a

claim on behalf of any creditor who does not timely file a proof of claim.

Rule 3002(c) provides that creditors holding unsecured claims must file proofs of claims within 90 days after the first day set for the meeting of creditors. If a creditor does not file a claim before the expiration of this 90 day period, however, the debtor may file a claim on that creditor's behalf. Fed. R.Bankr.P. 3004.

The Myers group did not file a proof of claim within 90 days of the meeting of creditors. Neither Ain nor the Trustee filed a proof of claim within the next 30 days pursuant to section 501(c) and rule 3004. The 120 days afforded all interested parties, therefore, expired. Ain did not move to file a late proof of claim on behalf of the Myers group until June 24, 1993, 73 days after the 120 day period ended.

The issue underlying this appeal appears simplistic: whether the late filing of a proof of claim is alone a basis for disallowance of that claim. This issue's resolution, however, has not been uniform. Courts are divided, drawing different conclusions based on different interpretations of the bankruptcy code and accompanying rules.

The United States Bankruptcy Court for the District of Minnesota developed the first popular rationale in *In re Hausladen*, 146 B.R. 557 (Bankr.D.Minn.1992) (en banc). Focusing on the language of section 502, the *Hausladen* court concluded that claims, proof of which are filed after the 90 day period afforded to creditors in rule 3002(c), are claims against the estate which, even in the face of an objection based on timeliness, must be allowed. *Hausladen* at 559–560. Section 502(a) states: "A claim or interest ... is deemed allowed, unless a party in interest ... objects." 11 U.S.C. § 502(a) (1993). Section 502(b) then sets forth eight grounds for objection. Untimeliness, however, is not one of these grounds. Because lateness is not one of the eight statutory factors, the court concluded that a claim may not be disallowed for lateness. *Id.* The *Hausladen* court did not ignore the 90 day filing period of rule 3002(c), but held the statute trumps the rule because they are in conflict. *Id.* at 561.

Soon after *Hausladen*, several federal courts found its reasoning unpersuasive. *See In re Zimmerman*, 156 B.R. 192 (Bankr. W.D.Mich.1993) (en banc); *see also In re Bailey*, 151 B.R. 28 (Bankr.N.D.N.Y.1993). Unlike *Hausladen*, *Zimmerman* reconciles sections 501, 502, and Rule 3002(c). Realizing that Congress intended the code to operate harmoniously in the expeditious administration of Chapter 13 cases, the *Zimmerman* court reasoned that time frames for filing claims were intentionally abbreviated.

*Zimmerman* harmonizes the code with the rules by describing the logical procedural structure mandated by sections 501 and 502. Section 501 creates the right to file a claim and identifies the parties afforded that right. Only when a claim meets section 501's threshold requirements will section 502's allowance criteria become relevant. Section 501 contemplates a time limit in which to file claims. *Zimmerman* at 196. Because section 501 fails to establish the time limits in which to file and the penalty, if any, for not filing within the time period, the *Zimmerman* court turned to the rules for procedural guidance. *Id.* at 195–196.

Although not statutory, the Supreme Court promulgated the Federal Bankruptcy Rules pursuant to authority granted by Congress under 28 U.S.C. § 2075 (1993). Court rules are presumed to be within the guidelines of their enabling statute. *Hanna v. Plumer*, 380 U.S. 460, 471, 85 S.Ct. 1136, 1144, 14 L.Ed.2d 8 (1965). The Bankruptcy Rules, therefore, have the force and effect of law. *In re Bailey* at 33 (citing *In re Brooks Fashion Stores*, 124 B.R. 436, 440 (Bankr. S.D.N.Y.1991)).

The *Zimmerman* court construed strictly rule 3002(c) as a statute of limitations barring the late filing of proofs of claims. *Zimmerman* at 198; *accord, In re Bailey* at 30. Because the 90 day period had expired, the court expunged the creditor's claim. As the claim never satisfied the timeliness requirement of section 501, the allowance criteria of section 502 never became relevant for the *Zimmerman* court. Neither the debtor nor the trustee in *Zimmerman* needed to rely on the eight enumerated grounds for objection

to allowance of the proof of claim in section 502, for the creditor did not timely file under section 501.

Another judge of this district declined to follow the *Hausladen* ruling, and instead adopted as persuasive the reasoning of *In re Zimmerman. See In re Babbin*, 160 B.R. 848, 849 (D.Colo.1993). The *Zimmerman* court's construction of the statutory language *in pari materia* with the court rules furthers congressional intent. Policy considerations also support the necessity of a bar date in bankruptcy reorganizations: filing deadlines provide the debtor and creditors with finality, ensuring swift distribution of the bankruptcy estate. The *Hausladen* interpretation, by allowing late claims for payment under a Chapter 13 plan, unfairly prejudices unsecured creditors who would receive less than their pro rata distribution as set forth under the approved plan. I agree that *In re Zimmerman* is persuasive and decline to follow *In re Hausladen*.

Generally, in cases addressing the timeliness issue, it is the debtor who objects to the timeliness of a creditor's claim. Courts in these cases thus focus on section 501(a) and the 90 day filing period of rule 3002(c). Here, however, it is the creditor and trustee objecting to the debtor's late filed claim. I focus on section 501(c) and rule 3004.

■ Section 501(c) creates the right of a debtor to file a proof of a creditor's claim when that creditor does not file a proof of such claim in a "timely" manner. 11 U.S.C. § 501(c) (1993). Section 501 contemplates a time limit in which to file claims. *Zimmerman* at 196. Yet, because section 501 fails to specify the time limits in which to file and the sanction for failing to file timely, I turn to the rules for procedural guidance. *Id.* at 195–196.

Similar to rule 3002(c), rule 3004 sets the time limit, the form, and the procedure for filing proofs of claims: "If a creditor fails to file a proof of claim on or before the first date set for the meeting of creditors called pursuant to § 341(a) of the Code, the debtor or trustee may do so in the name of the creditor, within 30 days after expiration of the time for filing claims prescribed by rule 3002(c) . . ." Fed.R.Bankr.P. 3004. The notes accompanying rule 3004 are instructive:

> Under the rule as amended, the debtor or trustee in a chapter 7 or 13 case has 120 days from the first date set for the meeting of creditors to file a claim for the creditor. During the first 90 days of that period the creditor in a chapter 7 or 13 case may file a claim as provided by rule 3002(c). If the creditor fails to file a claim, the debtor or trustee shall have an additional 30 days thereafter to file the claim.

Fed.R.Bankr.P. 3004 advisory committee's note. Rule 3004, therefore, does not expressly extend the time for filing a claim beyond that already established by rule 3002(c).

■ Like the *Zimmerman* court's treatment of rule 3002(c), I construe rule 3004 as a limitations period barring the late filing of proofs of claims. I conclude that in order for an unsecured creditor's claim to meet the threshold requirement for allowance under section 502(a), a proof of claim must be filed under section 501 which comports with either rule 3002(c) or 3004. Ain's proof of claim fails to satisfy the timeliness requirement of rule 3004. Therefore, Ain's proof of claim was untimely.

■ This conclusion does not end the inquiry, however, because rules 3002(c) and 3004 differ in that the bankruptcy court may, in its discretion, enlarge the time to file a proof of claim under rule 3004. Rule 9006(b)(1) establishes the criteria for enlargement of time:

> Except as provided in paragraphs (2) and (3) of this subdivision, when an act is required or allowed to be done at or within a specified period by these rules or by a notice given thereunder or by order of court, the court for cause shown may at any time in its discretion (1) with or without motion or notice, order the period enlarged if the request therefor is made before the expiration of the period originally proscribed or as extended by a previous order or (2) *on motion made after the expiration of the specified period permit the act to be done where the failure to act was the result of excusable neglect.*

Fed.R.Bankr.P. 9006(b)(1) (emphasis added). Because Ain moved for permission to file the late proof of claim 73 days after the 30 days afforded by rule 3004 expired, subsection (2) of rule 9006(b)(1) governs. The bankruptcy court, however, failed to address whether .Ain's failure to act timely resulted from ex-·cusable neglect and issue findings on this question. *See Pioneer Investment Services Co. v. Brunswick Associates Ltd. Partnership,* 507 U.S. 380, 113 S.Ct. 1489, 123 L.Ed.2d 74 (1993) (defining "excusable neglect" for purposes of review). As the bankruptcy court did not make requisite findings, I must remand for its determination whether Ain's neglect may be characterized as excusable under rule 9006(b)(1).

The Myers group and the Trustee argue that the excusable neglect provision of rule 9006(b)(1) is irrelevant. They assert that rule 9006(b)(3) removes a court's discretion to grant an extension: "The court may enlarge the time for taking action under rules 1006(b)(2), 1017(e), 3002(c), 4003(b), 4004(a), 4007(c), 8002, and 9033, only to the extent and under the conditions stated in those rules." Fed.R.Bankr.P. . 9006(b)(3). Both the Myers group and the trustee concede that rule 9006(b)(3) does not mention rule 3004. They argue, however, that rule 9006(b)(3)'s citation to rule 3002(c) implicitly incorporates by reference rule 3004. I disagree.

The notes accompanying rule 9006(b) illustrate that the drafters intended to defer to congressional choice where Congress chose specific grounds for enlargement of time: "Unless a rule which contains a specific authorization to extend time is listed in paragraph (3) of this subdivision, an extension of the time may be granted under paragraph (1) of this subdivision." Fed.R.Bankr.P. 9006(b) advisory committee note. The rules referenced by rule 9006(b)(3) set forth specific grounds for enlargement. Rules 1006(b)(2), 4004(b), and 4007(c) allow enlargement only "for cause." Rule 4003(b) gives the bank-ʺruptcy court complete discretion to extend ·the filing deadline. The remaining rules, similar to rule 3002(c), enumerate specific circumstances under which enlargement may be granted. Application of the excusable neglect criterion of rule 9006(b)(2) to the rules listed by rule 9006(b)(3) would frustrate congressional intent and complicate the analysis of a bankruptcy court's attempt to respond to a request for extension of time.

If the drafters of rule 9006 intended to exempt rule 3004 from the excusable neglect standard of rule 9006(b)(2), then surely they would have listed rule 3004 in rule 9006(b)(3). The exceptions listed in rule 9006(b)(3) must be read as exclusive or rule 9006(b)(3) has no meaning.

 I hold that a bankruptcy court may enlarge the time for taking action under rule 3004 if the court finds that excusable neglect exists pursuant to rule 9006(b)(1). Although rule 9006(b)(3) provides that the time limit imposed by rule 3002(c) may not be enlarged except as provided by one of the six exception recognized by rule 3002(c), rule 9006(b)(3) does not incorporate rule 3004 by implication. Rule 3004's filing deadlines, therefore, may be enlarged only upon a finding of excusable neglect.

## 2. Relief from Stay

 After the November 3, 1993 hearing, the bankruptcy court granted the Myers group relief from the automatic stay provisions of section 362. At the close of that hearing, the bankruptcy judge granted relief "for cause." Section 362(d)(1) states:

> [O]n request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay—(1) for cause, including the lack of adequate protection of an interest in property of such party in interest. . . .

11 U.S.C. § 362(d)(1) (1993). The code fails to define "for cause." Courts, in determining whether to grant relief from stay for cause, have applied different tests. Whatever test a court chooses to apply, a decision to grant relief from stay may be set aside only for an abuse of discretion. *Pursifull v. Eakin,* 814 F.2d 1501, 1506 (10th Cir.1987)

In his written order granting relief from stay, the bankruptcy judge did not set forth

his reasons for permitting the stay to be lifted. At the close of the November 3, 1994 hearing, however, the transcript reflects the bankruptcy judge noted three things: (1) because Ain had neither listed nor included them in her Chapter 13 plan, the Myers group's claims are non-dischargeable (Nov. 3, 1993 Hr'g. Tr., Vol. II at 200); (2) the Myers group demonstrated a probability of success on the merits of its California litigation against Ain due to the "strong inference . . . of fraudulent activity" (Nov. 3, 1993 Hr'g. Tr., Vol. II at 179, 200) and; (3) Ain lacked credibility (Nov. 3, 1993 Hr'g. Tr., Vol. II at 200).

■■■ Where a movant seeks relief from stay to pursue a specific remedy not available under the Bankruptcy Code, or because the bankruptcy proceeding will not adequately protect its interests, the most appropriate test for determining the propriety of relief derives from *In re Reisor Co.,* 46 B.R. 290 (Bankr.W.D.La.1985). *In re Peterson,* 116 B.R. 247, 249 (D.Colo.1990); *See also Granger v. Harris (In re Harris),* 85 B.R. 858, 860 (Bankr.D.Colo.1988) (applying portion of test).

Under this test, a court may modify the stay to permit an action to proceed in a different forum if (1) relief will not prejudice the debtor substantially, (2) the relative hardship suffered by the creditor outweighs that of the debtor, and (3) the creditor has demonstrated a probability of success on the merits of the action. *Reisor* at 291.

Citing *In re Pioneer Commercial Funding Corp.,* 114 B.R. 45 (Bankr.S.D.N.Y.1990), Ain argues that relief from stay may only be granted for "extraordinary circumstances." The "extraordinary circumstances" standard is a limited one. The creditor in *Pioneer Commercial* requested relief from stay *one month* after commencement of the debtor's Chapter 11 case. As grounds for its request, the creditor cited only judicial economy and administrative efficiency. The *Pioneer Commercial* court held that the debtor should, at a minimum, have the benefit of the 120 day exclusivity period under 11 U.S.C. § 1121(b) to formulate a plan of reorganization. *Id.* at 48. Ain cannot argue that the bankruptcy court denied her the benefits of the 120 day exclusivity period. The bankruptcy court did not grant the Myers group relief from stay until November 4, 1993, more than ten months after Ain filed her original Chapter 13 plan.

■■■ The "extraordinary circumstances" standard of *Pioneer Commercial* should apply only where creditors prematurely request relief from stay. That is not the case here. The bankruptcy court, therefore, did not abuse its discretion by refusing to apply the extraordinary circumstances test.

It is unclear here whether the bankruptcy court applied the *Reisor* test. Its application to the record in this case leads me to conclude that I should remand the relief from stay issue to the bankruptcy court for further proceedings.

A court may grant relief from stay only if relief will not prejudice the debtor substantially. *Reisor* at 291. Citing *Jones v. Arross,* 9 F.3d 79, 81 (10th Cir.1993), the Myers group argues that, because Ain failed to list the Myers group and include them in her Chapter 13 plan, the claims are non-dischargeable. The Myers group concludes that Ain would have to reckon with the California action at some future date, and that Ain's participation in a pre-petition suit could not substantially prejudice her interests.

■■■ Were I to affirm the bankruptcy court's decision to grant the Myers group relief from stay, that relief may prejudice Ain if the bankruptcy court determines on remand that Ain's neglect was excusable under rule 9006(b)(1). A determination of excusable neglect would allow Ain to file a late proof of claim on behalf of the Myers group. The Myers group could then request the bankruptcy court to determine whether the claim is non-dischargeable. Because the bankruptcy court on remand may permit Ain to file a late proof of claim and ultimately determine that claim is dischargeable, I remand the relief from stay issue for further proceedings consistent with this opinion.

### 3. Stay of Execution

Ain's attempts to appeal the bankruptcy court's decision to deny her a stay of execu-

tion pending appeal. Generally, however, courts deem issues not pursued in the brief-in-chief abandoned and waived. Fed. R.App.P. 28(a)(3); *Boone v. Carlsbad Bancorporation, Inc.*, 972 F.2d 1545, 1554 n. 6 (10th Cir.1992); 16 Charles A. Wright, Arthur R. Miller, Edward H. Cooper, and Eugene Gressman, Federal Practice and Procedure § 3974, at 421 (1977 & Supp.1993, at 690). Because Ain does not argue this issue in her brief-in-chief, I do not address this issue.

### III.

Accordingly, I remand this case for further proceedings on two issues: 1) whether Ain's failure to comply with the timeliness requirements of rule 3004 resulted from excusable neglect and; 2) whether relief from the automatic stay provisions of section 362 is appropriate.

I ORDER that:

1) this case is REMANDED for further proceedings consistent with this opinion.